**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RODNEY GLENN DAVENPORT,

      Petitioner,

v.                               Case No: 10-13567

LLOYD RAPELJE,

      Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**
**AND DENYING CERTIFICATE OF APPEALABILITY**

Petitioner Rodney Glenn Davenport filed a *pro se* petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254. Petitioner, currently incarcerated at the Thumb

Correctional Facility in Lapeer, Michigan, challenges his convictions for three counts of

first-degree murder. He argues that the trial court erred in admitting into evidence his

pre-arrest statement to police, that he received ineffective assistance of counsel, that

the prosecutor engaged in misconduct, that the trial court improperly denied a discovery

motion, and that the trial court erred in denying a motion for a directed verdict.

Respondent has filed a response arguing that the claims are meritless. For the reasons

set forth, the court denies the petition.

## I. BACKGROUND

Petitioner's convictions arise from the July 2006 murders of James Hanson, Allyn

Oesterle, and Marie Melzer, in Lapeer, Michigan. The Michigan Court of Appeals

provided a factual overview of the case (which is presumed correct on habeas review,

*see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd*, 41 F. App'x

730 (6th Cir. 2002)):

Defendant, a drifter, stayed intermittently at an apartment in the Pines of Lapeer apartment complex that his friends rented.  The victims also lived at the complex. Hanson and Oesterle lived together in an apartment in building 2 of the complex, while Melzer lived alone in building 3.  Hanson, an acquaintance of defendant, owned an S-10 pickup truck that he would not let others drive.  Melzer was 76 years old and was confined to a wheelchair. She typically kept the doors to her apartment unlocked.

Defendant had a drinking problem and, apparently, could be violent when intoxicated.  Defendant and Michael Bobier, one of the individuals who defendant was staying with, fought on Friday, July 14, 2006, over some money that defendant owed.  Defendant left the apartment and did not return until the evening of July 16.

Defendant had been drinking on July 16.  When he returned to his friends' apartment, he only stayed a short time and then left to visit others in the complex.[1]  Eventually, defendant went to the apartment of Ashley Hecht, another acquaintance who lived in the complex, and he continued to drink. He eventually left and headed toward the building in which Melzer lived. Some time after about 1:00 a.m. on July 17, Hecht and her boyfriend saw defendant walking briskly away from Melzer's apartment building.

That day, Melzer's body was discovered in her apartment.  She had died of multiple stab wounds to her chest. Defendant's fingerprint was found on an insurance card in Melzer's apartment, and a cigarette butt collected from her apartment contained defendant's DNA.  The bodies of Hanson and Oesterle were discovered in their apartment the following day.  Both men had been stabbed in the chest and someone had rummaged through Hanson's pockets.  Hanson's truck was gone.

Hanson's abandoned truck was later discovered along the westbound ramp of M-15 entering onto I-69.  The truck had run out of gas, and investigators would later identify defendant's DNA on the driver's-side door of the truck.  On July 17, several witnesses testified that they saw defendant hitchhiking along the stretch of I-69 between the M-15 exit and the apartment complex, and passers-by eventually gave defendant a ride back to the apartment complex.  Defendant was soon identified as a person of interest and was questioned by investigators shortly after returning to the complex.  However, he was not arrested on July 17.

Early in the morning of July 18, defendant collected his things and his mother drove him to the small community of Otter Lake, where he had grown up.  At Otter Lake, defendant encountered a childhood

2

acquaintance, Turessa VanHorn, and reintroduced himself.  Later, he told
VanHorn that he was "in trouble for some traffic violations."  Some time
thereafter, he admitted "that he was in more trouble than traffic violations
but he didn't tell [VanHorn] what. . . ."  VanHorn did not question
defendant regarding this statement, believing that it would be best if she
did not know too much about the situation. Defendant went to sleep in
VanHorn's car and was arrested later that evening.

[1] Some witnesses also saw defendant with Hanson at a gas station that evening.

*People v. Davenport*, No. 279040, 2009 WL 724116, *1 (Mich. Ct. App. March 19,

2009).

A jury in Lapeer County Circuit Court found Petitioner guilty of three counts of

first-degree murder.  On June 18, 2007, he was sentenced to life in prison.  He filed an

appeal as of right in the Michigan Court of Appeals.  He raised these claims (the first

four through counsel, and the remaining two in a *pro per* brief):

    I.      The trial court violated defendant-appellant's due process rights by
           admitting his statements to police made in response to custodial
           questioning without *Miranda* rights.

    II.     Defendant-appellant was denied effective assistance of counsel by
           counsel's opening the door and failure to object to inadmissible and highly
           inflammatory evidence that he committed a prior unrelated assault.

    III.    Prosecutorial misconduct in closing argument denied defendant appellant
           a fair trial by misstating evidence.

    IV.    The prosecutor denied defendant-appellant a fair trial by vouching for the
           credibility of the police investigation.

    V.      The trial court violated defendant-appellant's due process rights by
           denying a motion for discovery of witnesses criminal histories (LIENS) and
           a renewal motion of same.

    VI.    The trial court violated defendant-appellant's due process rights by not
           declaring a directed verdict of acquittal when the prosecution did not prove
           beyond a reasonable doubt every element of the charged offense.

The Michigan Court of Appeals affirmed Petitioner's convictions.  *Davenport*,

3

2009 WL 724116, *1.

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. He raised the same claims raised in the Michigan Court of Appeals.  The Michigan Supreme Court denied leave to appeal, *People v. Davenport*, 772 N.W.2d 408 (Mich. Sept. 28, 2009), and denied Petitioner's motion for reconsideration.  *People v. Davenport*, 775 N.W.2d 750 (Mich. Dec. 21, 2009).

Petitioner then filed the pending habeas petition.  He raises the same claims raised in state court.

## II.  STANDARD

Petitioner's claims are reviewed under the standard established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"
*Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).  However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21; *see also Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 789 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . .  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786-87 (internal quotation omitted).

      Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as

determined by the Supreme Court at the time the state court renders its decision.  *See*

*Williams,* 529 U.S. at 412.  Section 2254(d) "does not require citation of [Supreme

Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so

long as neither the reasoning nor the result of the state-court decision contradicts them."

*Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original).  "[W]hile the principles of

'clearly established law' are to be determined solely by resort to Supreme Court rulings,

the decisions of lower federal courts may be instructive in assessing the

reasonableness of a state court's resolution of an issue."  *Stewart v. Erwin*, 503 F.3d

488, 493 (6th Cir. 2007).

Lastly, a federal habeas court must presume the correctness of state court

factual determinations.  *See* 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this

presumption only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358,

360-61 (6th Cir. 1998).

### III.  DISCUSSION

#### A. Alleged *Miranda* Violation

In his first habeas claim, Petitioner argues that the trial court erred in admitting

his statement to police.  Petitioner claims that the statement was involuntary because

police failed to advise him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966),

prior to questioning him.

The trial court conducted an evidentiary hearing pursuant to *People v. Walker*,

132 N.W.2d 87 (1965),[1] to determine the voluntariness of Petitioner's statement to

---

[1] *Walker* requires that an evidentiary hearing be conducted when a defendant challenges the admissibility of a confession.

police.  Police officer Richard Schoenherr testified that he located Petitioner on the night the murder victims were discovered because a woman interviewed by police, Ashley Hecht, stated that, on the night of the murder, Petitioner was highly intoxicated and acting inappropriately toward her.  Officer Schoenherr asked Petitioner whether he would be willing to come to the police station to discuss Hecht's allegations.  Petitioner acquiesced.  Officer Schoenherr drove Petitioner to the police station because Petitioner had no other way to get there.  Petitioner was not handcuffed and Officer Schoenherr did not frisk Petitioner before driving him to the police station.

Once at the police station, Detective Sergeant Thomas Smith interviewed Petitioner.  Detective Sergeant Smith wished to talk to Petitioner because police were investigating a serious crime in the area, a witness had informed police that Petitioner was in the area when the crime occurred, and the police therefore believed Petitioner might have relevant information.  Petitioner agreed to talk.  Detective Sergeant Smith told Petitioner that he was not under arrest and was free to leave at any time.  When the interview concluded, Detective Sergeant Smith drove Petitioner back to the apartment complex.  Petitioner rode in the front seat of Smith's vehicle.

The trial court reviewed a videotape of Detective Sergeant Smith's interview of Petitioner and described the interview as "casual, very open" and "very relaxed congenial questioning."  Tr., *Walker* Hearing at 65.  The trial court noted that Petitioner was not handcuffed, was left alone in the room several times for extended periods and walked out of the room.  After considering the videotape and the testimony of the two police officers, the trial court concluded that the statement was admissible because Petitioner was not in custody at the time it was made.

7

The Michigan Court of Appeals denied Petitioner's *Miranda* claim, stating:

"A statement obtained from a defendant during a custodial interrogation is admissible only if the defendant voluntarily, knowingly, and intelligently waived his Fifth Amendment rights." *People v. Akins*, 259 Mich.App. 545, 564, 675 N.W.2d 863 (2003), citing *Miranda, supra.* Here, there is no dispute that defendant did not receive *Miranda* warnings before he made his statement. However, "[i]t is well settled that *Miranda* warnings need be given only in situations involving a custodial interrogation." *People v. Zahn*, 234 Mich.App. 438, 449, 594 N.W.2d 120 (1999). A custodial interrogation is a questioning initiated by law enforcement officers after the accused has been taken in custody or otherwise deprived of his freedom of action in any significant way. *Id.* Whether an accused was in custody at the time of the interrogation depends on the totality of the circumstances, and the key question is whether the accused reasonably could have believed that he was not free to leave. *Id.*

"[T]he requirement of warnings [is not] to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" (*People v. Mendez*, 225 Mich. App. 381, 384, 571 N.W.2d 528 (1997), quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).)

The trial court did not err when it permitted the prosecutor to admit evidence concerning defendant's statement to Officer Thomas Smith, because defendant was not in custody when he gave the statement. Defendant was not in a situation in which he could come to the reasonable conclusion that he was not free to leave or to refrain from answering questions posed by Smith. Defendant was informed that Smith wanted to talk to him about Melzer's murder and agreed to an interview. Defendant was transported to the police station by police cruiser for his convenience because he did not have another source of transportation, and he was not restrained or searched before entering the cruiser. The interview was fairly short and defendant was left alone and unrestrained in the interview room for at least ten minutes. And finally, although defendant was not given a formal *Miranda* warning, Smith told him that he was free to leave and was not obligated to answer any questions. Considering that Smith told defendant that he was free to end the questioning and leave and the officers acted in a manner consistent with such an assertion, defendant could not reasonably conclude that he was in custody when he spoke to Smith. Therefore, the officers were not required to give defendant a *Miranda* warning, and the trial court did not err when it admitted evidence concerning this interview.

*Davenport*, 2009 WL 724116 at *2.

The procedural safeguards imposed by *Miranda* are designed "to safeguard the uncounseled individual's Fifth Amendment privilege against self-incrimination . . . while in police custody." *Thompson v. Keohane*, 516 U.S. 99, 107 (1995). Custody is determined by examining whether a reasonable person in the suspect's position would believe that he or she was free to leave. *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984); *see also Stansbury v. California*, 511 U.S. 318, 323 (1994) ("[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned."). "Courts must examine 'all of the circumstances surrounding the interrogation' and determine 'how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action.'" *Yarborough v. Alvarado*, 541 U.S. 652, 663 (2004) (quoting *Stansbury,* 511 U.S. at 322).

The Supreme Court has characterized this standard for determining whether a person is in custody as a "general" rule. *Yarborough,* 541 U.S. at 664. When determining whether a state-court adjudication of a claim involved an unreasonable application of clearly established law, more latitude is afforded the state courts in applying a "general" rule:

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the

9

rule's specificity. The more general the rule, the more leeway courts have
in reaching outcomes in case by case determinations.

*Id.* at 664.

The Michigan Court of Appeals' decision was reasonable.  Petitioner voluntarily
accompanied Officer Schoenherr to the police station.  Detective Sergeant Smith told
him he was free to leave at any time.  Petitioner was left alone in the interview room,
walked around, and left the room.  *Cf. Mason v. Brunsman*, 483 F. App'x 122, 127 (6th
Cir. 2012) (concluding that petitioner was in custody when, in addition to other factors,
he was supervised by at least three armed officers at all times).  Petitioner was not
handcuffed or frisked at any time.  And, when driven home, Petitioner rode in the front
seat beside Detective Sergeant Smith.  Considering the totality of these circumstances,
the Michigan Court of Appeals' decision that Petitioner was not in custody was not
contrary to, or an unreasonable application of, federal law.

### B.  Ineffective Assistance of Counsel Claim

In his second habeas claim, Petitioner argues that he received ineffective
assistance of counsel when counsel opened the door to prejudicial character evidence.
Counsel introduced evidence regarding Petitioner's good character and likeability when
drinking.  Petitioner claims this was ineffective because it opened the door to rebuttal
testimony from Victor Wade Smyszak that Petitioner had been violent in a fight when
intoxicated.

To establish that he received ineffective assistance of counsel, a petitioner must
show, first, that counsel's performance was deficient and, second, that counsel's
deficient performance prejudiced the petitioner.  *Strickland v. Washington*, 466 U.S.

10

668, 687 (1984).  A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance."  *Id.* at 689.  This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  A court's review of counsel's performance must be "highly deferential."  *Id.* at 689.  Habeas relief may be granted only if the state-court decision unreasonably applied the standard established by *Strickland* for evaluating an ineffective-assistance-of-counsel claim.  *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009).  "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold."  *Id.* at 123 (internal quotation omitted).

The Michigan Court of Appeals, applying the standard articulated in *Strickland*, held that counsel's decision to admit character evidence was reasonable.  The state appellate court noted that the prosecutor painted a portrait of Petitioner as a "violent, unstable, alcoholic drifter."  *Davenport*, 2009 WL 724116 at * 4.  The court concluded it was reasonable for defense counsel to attempt to counter this portrait with testimony that Petitioner, when intoxicated, was generally peaceful.  Before defense counsel introduced this character evidence, the prosecutor had already presented testimony that

11

Petitioner had fought when intoxicated. Therefore, defense counsel essentially had nothing to lose in introducing positive character evidence.

The rejection of this claim by the Michigan Court of Appeals is neither contrary to, nor an unreasonable application of, Supreme Court precedent or federal law. Petitioner is unable to overcome the strong presumption that counsel rendered adequate assistance and "made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Although some attorneys may not have chosen to present this testimony, that is not the test for habeas review. The Supreme Court has stated that there are "countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. Petitioner has failed to demonstrate that his counsel's representation fell below the reasonableness standard set forth in *Strickland*.

### C. Prosecutorial Misconduct Claims

In his third and fourth habeas claims, Petitioner raises claims of prosecutorial misconduct. First, he argues that the prosecutor misstated the evidence when, in closing argument, the prosecutor claimed that Petitioner admitted to VanHorn that he had "done something really bad." Second, Petitioner argues that the prosecutor improperly implied that he was involved in the police investigation and vouched for the quality of the investigation. Despite finding the claims not properly preserved, the Michigan Court of Appeals nevertheless denied them on the merits.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *Parker v. Matthews*, ___ U.S. ___, 132 S.Ct.

12

2148, 2153 (June 11, 2012).  In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  132 S.Ct. at 2153 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  At issue is whether the Michigan Court of Appeals's decision denying Petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  132 S. Ct. at 2155.

The Michigan Court of Appeals held that the prosecutor's characterization of VanHorn's testimony did not misstate the evidence presented:

> During his closing argument, the prosecutor summarized Turessa VanHorn's testimony as follows:
>
>> Then we look at Rodney's behavior when he's on the run. He threatens Turessa VanHorn, "Take me somewhere or I'll do something to you and your family."  He admits to her that he did something really bad but won't tell her what.
>
> Defendant claims that in making this argument, the prosecutor improperly claimed that defendant "did something really bad" when the evidence did not support such a claim.  However, the prosecutor's statements present a reasonable inference that can be drawn from VanHorn's testimony. VanHorn testified that defendant initially told her that he was "in trouble for some traffic violations" and later claimed "that he was in more trouble than traffic violations but he didn't tell me what. . . ." By initially mentioning that he had some traffic violations, defendant implied that he was in some sort of legal trouble.  When defendant then altered his statement to claim that he was in "more trouble than traffic violations," a reasonable inference could be made that defendant's "trouble" with the authorities was more serious than a traffic infraction and, by process of elimination, rose to the level of some sort of criminal trouble, i.e., "something really bad."  In making the contested statement, the prosecutor presented a reasonable inference arising from VanHorn's testimony.  The prosecutor's statement was not improper and, therefore, defendant's claim of prosecutorial misconduct lacks merit.

13

*Davenport*, 2009 WL 724116 at *5 (ellipsis in original).

"[P]rosecutors can argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005). However, "counsel cannot misstate evidence." *United States v. Carter*, 236 F.3d 777, 784 (6th Cir. 2001). In this case, the prosecutor's argument, while not a direct quote, can be viewed as reasonably capturing the essence of VanHorn's testimony. The state court's finding of no prosecutorial misconduct was a reasonable application of Supreme Court precedent.

Next, Petitioner objects to the prosecutor's use of the words "we," "us," and "we've" when referring to steps taken during the police investigation. Specifically, Petitioner points to these portions of the prosecutor's closing argument:

> When we begin to investigate this crime we know we have three dead bodies. The medical examiner tells us the death occurred in all three instances in the early morning hours of July 17. Witnesses tell you that Rodney Davenport is in the area in the early morning hours. He's seen running across the parking lot at approximately 1:30 in the morning. We find out that Rodney Davenport was with James Hanson at 10:30 Sunday night. So we see this individual with one of the people who is found deceased later in his truck and we also see him running from the others' apartment at approximately 1:30 in the morning.
>
> *       *       *
>
> He tells us that he went straight back to bed and "That if anyone says I went anywhere else, they're idiots. . . ."

Tr., Vol. VIII at 1396-97.

The Michigan Court of Appeals held that the prosecutor did not improperly imply that he had been involved in the police investigation and thereby vouch for the validity of the investigation. The Michigan Court of Appeals viewed the prosecutor's use of "we"

14

and "us" as "rhetorical devices used to guide the jury through his analysis of the evidence and resulting conclusions."  It continued: "The prosecutor was not attempting to place himself in the middle of the police investigation or vouch for the credibility of this investigation, and his use of this rhetorical device did not constitute outcome-determinative misconduct."  *Davenport*, 2009 WL 724116 at *6.

The Michigan Court of Appeals correctly assessed the prosecutor's remarks.  His closing statement, read in its entirety, is a fair representation of the evidence presented; and there were no attempts to improperly vouch for the police investigation.  The state court's denial of Petitioner's prosecutorial misconduct claim was not lacking in justification and habeas relief is denied on this claim.

### D.  Trial Court's Denial of Discovery Motion

Petitioner next argues that his right to due process was violated by the trial court's denial of his discovery motion requesting access to witnesses' criminal histories.

To the extent that Petitioner claims that state discovery rules were violated, he is not entitled to habeas relief.  "There is no general constitutional right to discovery in a criminal case."  *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).  Therefore, a claim that state discovery rules were violated is not cognizable in federal habeas review, because it is not a constitutional violation.  *See Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002); *Friday v. Straub*, 175 F. Supp. 2d 933, 940 (E.D. Mich. 2001).

An evidentiary ruling may warrant habeas relief only where it violates due process.  For an evidentiary ruling to violate due process, it must be "so egregious that it results in the denial of fundamental fairness."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  "[T]he Supreme Court has defined 'very narrowly' the category of infractions

15

that violates 'fundamental fairness.'" *Bey v. Bagley*, 500 F.3d 514, 522 (6th Cir. 2007)

(quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). A state-court evidentiary

ruling does not violate due process unless it "offend[s] some principle of justice so

rooted in the traditions and conscience of our people as to be ranked as fundamental."

*Giles*, 449 F.3d at 704 (citing *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir.2001)).

The trial court's denial of Petitioner's discovery motion falls far below this high

threshold. The Michigan Court of Appeals held that the trial court properly declined to

order the prosecutor to run LEIN inquiries because Michigan law did not permit the

prosecutor to do so. *Davenport*, 2009 WL 724116 at * 6, (citing *People v. Elkhoja*, 467

Mich. 916, 658 N.W.2d 153 (2003)). The state court's evidentiary ruling, based on

Michigan law, does not implicate a firmly-rooted principle of justice so as to implicate

due process concerns. Habeas relief is denied on this claim.

### E. Sufficiency of the Evidence Claim

Finally, Petitioner argues that the trial court erred in denying his motion for a

directed verdict because the prosecutor presented insufficient evidence to prove each

element of first-degree premeditated murder. Petitioner's claim that the trial court erred

by refusing to enter a directed verdict is a state-law claim not cognizable on federal

habeas review. *King v. Trippett*, 27 F. App'x 506, 510 (6th Cir.2001) (citing *Estelle v.

McGuire*, 502 U.S. 62, 67–68, (1991)). That portion of this claim is denied. The second

portion of Petitioner's final claim, that the convictions are not supported by sufficient

evidence, is cognizable on federal habeas review.

The Michigan Court of Appeals, applying a standard that mimics the standard

established in *Jackson v. Virginia*, 443 U.S. 307 (1979), held that the trial court did not

err in denying Petitioner's motion for directed verdict.  The court's analysis, although

framed in the context of the directed-verdict claim, also held the prosecution presented

sufficient evidence to sustain Petitioner's first-degree murder convictions as to all three

victims.  After reciting the elements of first-degree premeditated murder, the court

stated:

> The prosecution presented substantial evidence linking defendant to
> Melzer's murder.  Several witnesses indicated that defendant was at the
> complex near Melzer's apartment building about the time she was
> murdered, and forensic evidence indicated that defendant had recently
> been in Melzer's apartment, although he initially denied ever having been
> there.  Melzer was an elderly, paralyzed woman who was stabbed multiple
> times; her fragile state belied an assumption that she might have been a
> threat to her killer, and her death by multiple stab wounds indicates that
> the killer had time to reflect on his actions as he stabbed her repeatedly in
> the chest.  This evidence was sufficient to survive a motion for directed
> verdict, and the trial court did not err when it denied defendant's motion for
> a directed verdict dismissing this charge of first-degree murder.
>
> The prosecution also presented sufficient evidence establishing that
> defendant murdered James Hanson and Allyn Oesterle to survive a
> motion for a directed verdict and to permit a reasonable jury to find
> defendant guilty of these counts of first-degree murder.  Although
> investigators did not discover forensic evidence at Hanson and Oesterle's
> apartment that directly linked defendant to the scene, the prosecution
> presented evidence that Hanson occasionally gave defendant rides in his
> truck, that Hanson was last seen with defendant before he was murdered,
> and that although Hanson never let anybody drive his truck and kept his
> truck keys with him at all times, his keys were not in his apartment when
> his body was discovered and it appeared that someone had gone through
> the pockets of his clothes.  Further, defendant was at the complex at the
> time in which Hanson and Oesterle were murdered.  In addition, after the
> murders, Hanson's truck was found abandoned on a highway miles away
> from the complex and defendant was spotted walking on the stretch of
> interstate between the apartment complex and the spot where Hanson's
> truck was abandoned.  Investigators also discovered defendant's DNA on
> the driver's side door of the truck. This evidence, taken in a light most
> favorable to the prosecution, indicates that defendant was in a position to
> kill Hanson and Oesterle.  In addition, Hanson and Oesterle died from
> multiple stab wounds.  Again, a reasonable juror could conclude that the
> killer had sufficient time to reflect on his actions as he repeatedly stabbed

17

each victim.  This evidence was sufficient to survive a motion for directed verdict, and the trial court did not err when it denied defendant's motion for a directed verdict to dismiss the charges of first-degree murder for the murders of Hanson and Oesterle.

*Davenport*, 2009 WL 724116 at *7.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson,* 443 U.S. at 319 (emphasis in original).  In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'"  *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency."  *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)).  First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Brown*, 567 F.3d at 205 (citing *Jackson,* 443 U.S. at 319).  Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not

18

unreasonable." *Id.*

Under Michigan law, "[in] order to convict a defendant of first-degree murder, the prosecution must prove that the defendant intentionally killed the victim and that the killing was premeditated and deliberate." *People v. Anderson*, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995). Premeditation may be inferred by the circumstances surrounding the killing. *People v. Marsack,* 586 N.W.2d 234, 371 (Mich. Ct. App. 1998).

The state appellate court applied the proper standard and thoroughly considered the evidence of Petitioner's guilt. The state court considered Petitioner's initial denial of having ever been in Melzer's apartment, and the forensic evidence showing that, despite his denials, he had recently been there. The state court also considered the testimony that Petitioner was seen with Hanson before he was murdered and that Petitioner was at the apartment complex when Hanson and Oesterle were murdered. In addition, because the victims each suffered multiple stab wounds, the state court concluded that the Petitioner had sufficient time to reflect on his actions. Under Michigan law, "[t]o premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v. Morrin*, 187 N.W.2d 434, 449 (1971). Although the minimum time required to premeditate "is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *People v. Vail*, 227 N.W.2d 535, 539 (1975), *overruled on other grounds by People v. Graves*, 581 N.W.2d 229 (1998). "[A]n opportunity for a 'second look' may be merely seconds, minutes, or hours, dependant on the totality of the circumstances surrounding the killing." *Johnson v. Hofbauer*, 159 F.Supp.2d 582, 596 (E.D. Mich.

19

2001).  The evidence presented, viewed most favorably to the prosecution, was sufficient for the Michigan Court of Appeals to reasonably find that Petitioner was guilty of first-degree murder.

## IV.  CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).  In this case, the court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted.  Therefore, the court will deny a certificate of appealability.

## V.  CONCLUSION

IT IS ORDERED that the petition for a writ of habeas corpus is DENIED and that the action is DISMISSED WITH PREJUDICE.

20

IT IS FURTHER ORDERED that a certificate of appealability is DENIED .

 s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  May 28, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 28, 2013, by electronic and/or ordinary mail.

 s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522